UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Cherlynne Peterson, Corey
Peterson, and Tasha Peterson,
individually and as assignees
of Dustin Jordan, doing
business as, The Silver Dollar,

　　　　　　Plaintiffs,

vs.　　　　　　　　　　R E P O R T　　A N D
　　　　　　　　　　　RECOMMENDATION

Scottsdale Insurance Company,

　　　　　　Defendant.　　　　　Civ. No. 04-4704 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.　Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the parties' cross-

Motions for Summary Judgment. Alternatively, the Plaintiffs have moved to certify the

interpretation of Minnesota Statutes Section 340A.409, Subdivision 1, to the

Minnesota Supreme Court, pursuant to Minnesota Statutes Section 480.065,

Subdivision 3. A Hearing on the Motions was conducted on July 27, 2005, at which

time, the Plaintiffs appeared by Susan J. Bowden, Esq., and the Defendant appeared by Christian A. Preus, Esq.   For reasons which follow, we recommend that the Defendant's Motion for Summary Judgment be granted, and that the Plaintiffs' Motion for Summary Judgment, or Alternatively to Certify Question to the Minnesota Supreme Court, be denied.

## II.   Factual Background

On January 1, 2003, Craig Peterson ("Peterson") died in a single vehicle crash after being served alcohol at "The Silver Dollar" bar, which is located in Elizabeth, Minnesota.   Subsequently, Peterson's wife and children, who are Plaintiffs in this action (the "Peterson Plaintiffs"), commenced a dram shop action against The Silver Dollar for loss of support, for damage to property, and for other pecuniary damages, pursuant to the Minnesota Civil Damages Act ("CDA"), Minnesota Statutes Section 340A.801.   The Silver Dollar denied liability, but a settlement was reached between the Peterson Plaintiffs, The Silver Dollar, and The Silver Dollar's insurer, the Defendant Scottsdale Insurance Company ("Scottsdale"), whereby the Peterson Plaintiffs and The Silver Dollar agreed that the reasonable value of the claims of the Peterson Plaintiffs was in excess of $300,000.00.   Pursuant to the Settlement Agreement, the Peterson Plaintiffs agreed to release The Silver Dollar from any further liability, while

Scottsdale agreed to compensate the Peterson Plaintiffs in the amount of $100,000.00.

However, the Plaintiffs, and Scottsdale, disagreed on the pertinent policy limitations

on the liquor liability policy that had been issued to The Silver Dollar, and The Silver

Dollar agreed to assign, to the Peterson Plaintiffs, any claims that it might have against

Scottsdale for the recovery of funds under its liquor liability insurance policy.

Subsequently, the Plaintiffs commenced this action for declaratory relief, in

Minnesota State Court, alleging that The Silver Dollar's policy with Scottsdale failed

to satisfy the coverage limitations established by Minnesota law.  Scottsdale removed

that action to this Court and, as noted, the parties have since filed cross-Motions for

Summary Judgment.

## III.  Discussion

A.     Standard of Review.   Summary Judgment is not an acceptable means

of resolving triable issues, nor is it a disfavored procedural shortcut when there are no

issues which require the unique proficiencies of a Jury in weighing the evidence, and

in rendering credibility determinations.  See, Celotex Corp. v. Catrett, 477 U.S. 317,

327 (1986); Duffy v. Wolle, 123 F.3d 1026, 1040 (8th Cir. 1997), cert. denied, 523

U.S. 1137 (1998).  Summary Judgment is appropriate when we have viewed the facts,

and the inferences drawn from those facts, in a light most favorable to the nonmoving

party, and have found no triable issue.  See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003); Jenkins v. Southern Farm Bureau Casualty, 307 F.3d 741, 744 (8th Cir. 2002); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is

-4-

entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B.     Legal Analysis.  The issues raised in the Plaintiffs' Complaint, as well as in the parties' Motions for Summary Judgment, center upon the liquor liability insurance coverage requirements, that are contained in Minnesota Statutes Section 340A.409, Subdivision 1(1), and whether the policy, that was issued by Scottsdale to The Silver Dollar, satisfies those requirements. Both the construction of an insurance policy, and the interpretation of a statute, are questions of law, and the parties are in agreement that the case should be resolved by Summary Judgment. See, Watson v.

<u>United Services Automobile Ass'n.</u>, 566 N.W.2d 683, 688 (Minn. 1997) ("The construction of statutes is a question of law[;] * * * [t]he interpretation and construction of an insurance contract is also a question of law.").

The Silver Dollar's policy contains a $100,000.00 "Each Common Cause Limit," and a $300,000.00 "Aggregate Limit." <u>Affidavit of Dorothy J. Paxton ("Paxton Aff.")</u>, at Exh. 2. The policy also provides that "[t]he Aggregate limit is the most that we will pay for all 'injury' as the result of the selling, serving, or furnishing of alcoholic beverages" and, "[s]ubject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all 'injury' sustained by one or more persons or organizations as the result of selling, serving, or furnishing of any alcoholic beverage to any one person." <u>Id.</u> at Bates No. 10, Section III, Subsections 2 and 3. The term "injury" is defined as "all damages, including damages because of 'bodily injury' and 'property damage' and including damages for care, loss of services or loss of support." <u>Id.</u> at Bates No. 9, Section V, subsection 5. In turn, the term "bodily injury" includes "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time," while the term "property damage" includes "[p]hysical injury to tangible property, * * * [or] [l]oss of use of tangible property that is not physically injured * * *." <u>Id.</u> Bates No. 9, Section V, subsections 1, and 7.

As an initial matter, we address the Plaintiffs' argument that the $300,000.00 aggregate limit should apply to their claim for "pecuniary damages." Under Minnesota law, "general contract principles govern the construction of insurance policies" and, as such, "insurance policies are to be interpreted to give effect to the intent of the parties." Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). Similarly, it has been "Minnesota's policy * * * to extend coverage rather than allow it to be restricted by ambiguous or confusing language." Brault v. Acceptance Indemnity Ins. Co., 538 N.W.2d 144, 147 (Minn. App. 1995), citing Hennen v. St. Paul Mercury Ins., 312 Minn. 131, 136, 250 N.W.2d 840, 844 (1977); see, Wanzek Construction, Inc. v. Employers Ins. of Wausau, 679 N.W.2d 322, 325 (Minn. 2004)("If policy language is ambiguous, it must be interpreted in favor of coverage."). However, "[w]hen the language of an insurance contract is unambiguous, we interpret that language in accordance with its plain and ordinary meaning." Illinois Farmers Ins. Co. v. Glass Services Co., 683 N.W.2d 792, 799 (Minn. 2004), citing Thommes v. Milwaukee Ins. Co., supra at 880.

While it is not entirely clear that Scottsdale's policy expressly covers "pecuniary damages," we need not reach that issue because, even assuming that the policy covers "pecuniary damages," the Plaintiffs cannot escape the policy's $100,000.00 "Each

Common Cause Limit."  Specifically, the terms of the policy are unambiguous that "injury" includes "all damages," and that, while Scottsdale will pay up to $300,000.00 for all 'injury' resulting from the sale of alcoholic beverages,  the most that Scottsdale will pay for all 'injury' sustained, as the result of furnishing alcoholic beverages to any one person, is $100,000.00.  See, <u>Scottsdale Ins. Co. v. Wohlsol, Inc.</u>, 2005 WL 2972997 at *4 (D. Minn., November 7, 2005).[1]  Here, all of the damages were sustained by the Peterson Plaintiffs as a result of The Silver Dollar's sale of alcoholic beverages to Peterson, and accordingly, Scottsdale's policy unambiguously limits the amount of  the Plaintiffs' recovery to $100,000.00.

As such, we turn to the crux of the Plaintiff's Complaint, as well as its present Motion -- that the $100,000.00 "Each Common Cause Limit" violates Minnesota Statutes Section 340A.409, Subdivision 1,[2] which provides as follows:

---

[1]In <u>Scottsdale Ins. Co. v. Wohlsol, Inc.</u>, 2005 WL 2972997 at *4 (D. Minn., November 7, 2005), the Court interpreted what appears to be an identical liquor liability insurance policy, and found that the maximum amount that the dram shop claimants could recover under the policy, as a result of the sale of alcohol to one person, was $100,000.00.

[2]In the alternative, the Plaintiffs have also requested that we certify the interpretation of Section 340A.409, Subdivision 1, to the Minnesota Supreme Court. Minnesota law allows a Federal Court to certify a question of law to the State Supreme Court where "the answer may be determinative of an issue in pending litigation before
(continued...)

**Subdivision 1.  Insurance Required.**  No retail license may be issued, maintained or renewed unless the applicant demonstrates proof of financial responsibility with regard to liability imposed by section 340A.801. The issuing authority must submit to the commissioner the applicant's proof of financial responsibility. This subdivision does not prohibit a local unit of government from requiring higher insurance or bond coverages, or a larger deposit of cash or securities. The minimum requirement for proof of financial responsibility may be given by filing:

(1)    a certificate that there is in effect for the license period an insurance policy issued by an insurer required to be licensed under section 60A.07, subdivision 4, or by an

---

[2](...continued)

the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state."   See, Minnesota Statues Section 480.065, Subdivision 3.  However, the use of a State's certification procedure "rests in the sound discretion of the federal court," Lehman Brothers v. Schein, 416 U.S. 386, 391 (1974), and "[t]he most important consideration guiding the exercise of this discretion * * * is whether the reviewing court finds itself genuinely uncertain about a question of state law." Johnson v. John Deere Co., a Division of Deere & Co., 935 F.2d 151, 153 (8th Cir. 1991), quoting Tidler v. Eli Lilly & Co., 851 F.2d 418, 426 (D.C. Cir. 1988).  "[W]ithout a 'close' question of state law or the lack of state sources a federal court should determine all the issues before it." Id., at 154, citing Perkins v. Clark Equipment Co., 823 F.2d 207, 209 (8th Cir. 1987).

Given these precepts, we are satisfied that certification of the issues presented, here, is not necessary, as Minnesota statutory guidance, as well as principles of statutory construction, which are set forth in the controlling law of Minnesota, are sufficiently clear to allow for our independent interpretation of the CDA. See, Scottsdale Insurance Co. v. Wohlsol, Inc., supra  at *2.  Accordingly, we recommend that the Plaintiffs' request for certification be denied.

insurer recognized as an eligible surplus lines carrier pursuant to section 60A.206 or pool providing at least $50,000 of coverage because of bodily injury to any one person in any one occurrence, $100,000 because of bodily injury to two or more persons in any one occurrence, $10,000 because of injury to or destruction of property of others in any one occurrence, $50,000 for loss of means of support of any one person in any one occurrence, and $100,000 for loss of means of support of two or more persons in any one occurrence;

(2)     a bond of a surety company with minimum coverages as provided in clause (1); or

(3)     a certificate of the commissioner of finance that the licensee has deposited with the commissioner of finance $100,000 in cash or securities which may legally be purchased by savings banks or for trust funds having a market value of $100,000.

This subdivision does not prohibit an insurer from providing the coverage required by this subdivision in combination with other insurance coverage.

An annual aggregate policy limit for dram shop insurance of not less than $300,000 per policy year may be included in the policy provisions.

A liability insurance policy required by this section must provide that it may not be canceled for:

(1)     any cause, except for nonpayment of premium, by either the insured or the insurer unless the canceling party has first given 30 days' notice in writing to the issuing authority of intent to cancel the policy; and

> (2)    nonpayment of premium unless the canceling party has first given ten days' notice in writing to the issuing authority of intent to cancel the policy.

Specifically, the Plaintiffs contend that the coverage limitations, which are recited in Section 340A.409, Subdivision 1(1), are cumulative, such that Scottsdale is legally obligated to provide The Silver Dollar with a policy that contains $100,000.00 in coverage for bodily injury, $100,000.00 in coverage for loss of means of support, and $10,000.00 of coverage for property damages, for a sum total of $210,000.00 in coverage for any one violation of the Act.   The Plaintiffs further assert that Scottsdale's failure to satisfy those purported statutory limits requires reformation of the policy, such that the Plaintiffs would be entitled to recover the policy's aggregate limit of $300,000.00 or, at the very least, $210,000.00.

Scottsdale opposes the Plaintiffs' interpretation of Section 340A.409, Subdivision 1, and urges, at the outset, that the statute governs liquor vendors, rather than insurers.   Scottsdale also asserts that, even if the statute could be read to govern their conduct, Summary Judgment would still be proper, as the policy that was issued to The Silver Dollar, and that contained the $100,000.00 "Each Common Cause Limit," was sufficient to satisfy the coverage requirements of that statute.   Each of the Defendant's arguments will be addressed in turn.

-11-

1.     The Application of Section 340A.409, Subdivision 1(1) to Insurers.

Scottsdale contends that the Plaintiffs' claims fail, as a matter of law, because the coverage requirements of Section 340A.409, Subdivision 1(1), apply solely to the applicant for a liquor license, and not to an insurance provider. Such an interpretation is supported by the plain language of the statute, which requires the liquor license "applicant" to demonstrate proof of financial responsibility, as well as comparative language from other statutes, which unequivocally regulate insurers rather than insureds.[3]     Moreover, Scottsdale's construction is also consistent with the

---

[3]Scottsdale has drawn our attention to a number of Minnesota Statutes which expressly regulate insurers, and which contain language that is markedly different from that which is contained in Section 340A.409, Subdivision 1(1). See, Minnesota Statutes Section 65A.01 Subdivision 1 ("No policy or contract of fire insurance shall be made * * * unless it shall provide the specified coverage * * *."); Minnesota Statutes Section 65B.134 ("Any policy of automobile insurance * * * must provide at the option of the insured complete coverage * * *."); Minnesota Statutes Section 65B.49, Subdivision 3a ("[N]o insurance policy * * * shall be issued * * * requiring the insurer to pay, * * *."); Minnesota Statutes Section 62F.04, Subdivision 2 ("If the association is authorized by the commissioner to issue insurance, it shall * * *."); Minnesota Statutes Section 62A.03, Subdivision 1 ("No policy of individual accident and sickness insurance may be * * * issued * * * unless * * *."); Minnesota Statutes Section 61A.03, Subdivision 1 ("No policy of life insurance may be issued * * * unless it contains the following provisions * * *.").

placement of Section 340A.409 in Chapter 340A, which generally regulates the sale of liquor, rather than the sale of insurance.

The Plaintiffs maintain that such an interpretation is contrary to a reading of Section 340A.409, Subdivision 1, as a whole, and would defeat the remedial purpose of the CDA. In support of their argument, the Plaintiffs draw our attention to other language, which appears in Section 340A.409, Subdivision 1, and which provides that "[a] liability insurance policy required by this section must provide that it may not be cancelled," except under specifically designated circumstances. Scottsdale concedes that this proviso applies to insurers, and the Plaintiffs assert that it would be absurd to interpret that subdivision in such a manner that some liquor liability insurance coverage requirements apply to the insurer, while others are directed solely at the liquor license applicant. We disagree with Scottsdale's concession, because we conclude that the plain language of the Act applies solely to liquor license applicants, which only indirectly causes policies to be issued which satisfy the requisites of the Act.

In interpreting Section 340A.409, we note that the Minnesota Supreme Court has recognized that dual purposes underlie the CDA, see, Lefto v. Hoggsbreath Enterprises, Inc., 581N.W.2d 855, 857 (Minn. 1998)("We have said that the Act is

both remedial and penal."), and that such a dual purpose has created somewhat of a conflict as to how the provisions of the CDA are to be interpreted, since remedial statutes are interpreted liberally, while penal statutes are construed narrowly.  See, Kryzer v. American Legion No. 600, 481 N.W.2d 98, 102 (Minn.App. 1992), rev'd on other grounds, 494 N.W.2d 35 (Minn. 1992).  As a consequence, while the Minnesota Supreme Court has expressed the "repeated view" that the CDA "was intended solely to protect 'innocent third persons' injured as a result of another's intoxication," see, Lefto v. Hoggsbreath Enterprises, Inc., supra at 857, quoting Herrly v. Muzik, 374 N.W.2d 275, 278 (Minn. 1985); see also, Kryzer v. American Legion No. 600, supra at 102, it has also observed, more recently, that the CDA is a "creature of statute," which "must be strictly construed."  See, Whitner ex rel. Miller v. Dahl, 625 N.W.2d 827, 833 (Minn. 2001); see also, Haugland ex rel. Donovan v. Mapleview Lounge & Bottleshop, Inc., 666 N.W.2d 689, 693 (Minn. 2003).

Ultimately, however, we cannot ignore the plain language of the Act, in order to pursue what the Plaintiffs regard as its spirit, since the Act expressly requires "the applicant" to provide proof of financial responsibility, see Kersten v. Minnesota Mutual Life Ins. Co., 594 N.W.2d 263, 266 (Minn. 2001)("We cannot ignore the plain language of [the statute]."), or the simple truth that the legislature is perfectly capable

of unambiguously imposing requirements on insurers, when it so desires, as it has

amply demonstrated throughout the expanse of Minnesota's Statutes.   Accordingly,

we agree with the Court in <u>Scottsdale Ins. Co. v. Wohlsol, Inc.</u>, supra at *5, which

recently explained:

> The purpose of [Section 340A.409, Subdivision 1] is to condition the grant of a liquor license to applicants who satisfy certain financial responsibility requirements, in one of three different ways.  The statute does not speak directly to insurance companies to insure dram shops in specified amounts.  While the statute will certainly have the indirect effect of causing insurance companies to issue policies with at least the minimum amount of insurance required by law, this particular statute places the onus on liquor licensees to establish and prove their financial responsibility, and failure to do so can not result in an insurance company violating the statute.

Therefore, we conclude that the coverage requirements, which are contained in Section

340A.409, Subdivision 1(1), do not apply to Scottsdale and, as a result, Scottsdale is

entitled to Summary Judgment.

    While we find that the inapplicability of Section 340A.409, Subdivision 1(1), to

insurers to warrant, in and of itself, an award of Summary Judgment in favor of

Scottsdale, in the interest of completeness, we proceed to the question of whether the

-15-

insurance policy, which was issued by Scottsdale, complies with the requisites of that Section.

  2. <u>The Sufficiency of the $100,000.00 "Each Common Cause Limit"</u>
    <u>under Minnesota Statutes, Section 340A.409, Subdivision 1(1)</u>.

    The Plaintiffs' argument, that the $100,000.00 "Each Common Cause Limit" violates Section 340A.409, Subdivision 1(1), is based on their contention that the coverage requirements, which are recited in that subdivision, are cumulative -- that is, they "stack" one upon another. As was the case with their inventive reading of Section 340A.409, Subdivision 1(1), so as to impose mandates on insurers rather than liquor license applicants, the Plaintiffs offer no authority to support their position, and we find the statutory language is unambiguous, when read in context. Scottsdale opposes the Plaintiffs' interpretation, and contends that its policy limit of $100,000.00 "Each Common Cause Limit" is fully compliant with the requirements of Section 340A.409, Subdivision 1.

  The precise issue presented here was recently decided by the District Court in <u>Scottsdale v. Wohlsol, Inc.</u>, supra, where the Court held that a liquor liability policy, which was issued by Scottsdale, and which contained a $100,000.00 "Each Common Cause Limit," fully satisfied the requirements of Section 340A.409, Subdivision 1.

In so holding, the Court noted that such a result was required by the language of the statute, id. at *5, and, to the extent that the Section was arguably ambiguous, was consistent with the interpretation of that statute by the Minnesota Department of Public Safety ("DPS") -- an interpretation that the Court concluded was entitled to deference. Id. at *6.

We have examined the statutory language, the interpretation of the statute by the DPS, and the Minnesota case law which interprets the CDA, and we concur with the Court's determination in Scottsdale v. Wohlsol, Inc., that "liquor license applicants choosing to satisfy their financial responsibility requirements with insurance as required by Minn. Stat. §340A.409 must obtain an insurance policy with a minimum limit of $100,000." Id. at *6. As was recognized in Wohlsol, the language of Section 340A.409, Subdivision 1, requires an applicant for a liquor license to provide proof of financial responsibility, which can be satisfied in one of three ways:  1) showing that it has an insurance policy with coverage equal to, or greater than, the specific amounts stated in the statute; 2) showing that it has a bond of a surety company with the same minimum coverages; or 3) showing that it has deposited $100,000.00 in cash or securities with the Commissioner of Finance.  In practical effect, if we were to accept the Plaintiffs' interpretation of that statute, those applicants who should choose to

-17-

establish financial responsibility, by purchasing insurance, would be required to afford a greater sum of funds for dram shop liability, than those applicants who should deposit cash with the Commissioner of Finance.   Such an interpretation would be unreasonable, if not absurd.   If public policy required cumulative coverages, then the amount of the coverage should be the same whether underwritten by an insurer, by cash, or by bond.   Stated otherwise, under the Plaintiffs' interpretation, the amount of funds, that would be required to be available for a dram shop claimant, would vary depending upon how the liquor license applicant should make its showing of financial responsibility.   We cannot attribute to the legislature an intent to legislate an unreasonable or absurd result.   See, Minnesota Statutes Section 645.17(1)("In ascertaining the intention of the legislature the courts may be guided by the following presumptions:  (1) the legislature does not intend a result this is absurd, impossible of execution, or unreasonable * * *.").

Moreover, as the Court in Wohlsol recognized, the Plaintiffs' proposed interpretation of the Act stands at odds with the interpretation of the statute by the DPS, which has published a Memorandum entitled "Process of Applying for Liquor License" on its website, that plainly advises liquor license applicants that "[t]he minimum limits of the policy are $100,000 and a $300,000 aggregate per policy year

per license location."   See, http://www.dps.state.mn.us/alcgamb/alcenf/process.htm,

Paxton Aff., at Exh. 6.   "[A]n agency's interpretation of the statutes it administers is

entitled to deference * * *."   Benda v. Girard, 592 N.W.2d 452, 455 (Minn. 1999),

quoting Geo. A. Hormel & Co. v. Asper, 428 N.W.2d 47, 50 (Minn. 1988); see also,

Johnson-Lee v. City of Minneapolis, 2004 WL 2212044 at *4 (D. Minn., September

30, 2004)("[An Agency's] interpretation of the terms used in the statutes it administers

is entitled to some weight."), citing Geo. A. Hormel & Co. v. Asper, supra at 50.

While we find that the DPS's interpretation of Section to be in conformity with its

plain language, even if we found the Section to bear some ambiguity, we conclude that

the DPS's construction is a reasonable one, which is entitled to weight and deference.

Lastly, while there is sparse Minnesota case law to guide our interpretation, the

Minnesota Court of Appeals' analysis, in Britamco Underwriters, Inc. v. A&A Liquors

of St. Cloud, 649 N.W.2d 867 (Minn. App. 2002), is instructive.   There, the Court

considered whether an individual who suffered bodily injury, as a result of the unlawful

sale of alcohol, could also assert his own claim for the loss of means of support under

the CDA.   The Court held that the person who suffered bodily injury could not assert

his own claim for a loss of means of support, as that phrase "incorporates within it the

requirement that a claimant be a dependent."   Id., at 872, citing Jones v. Fisher, 309

N.W.2d 726, 730 (Minn. 1981).  While this holding does not address the precise issue

presented here, the Court made the following observation with respect to the CDA,

which is germane to our analysis of the Plaintiffs' claim:

> We recognize that with the CDA's modest limit of $50,000
> for bodily injury, Eul[4] legitimately has a lack-of-coverage
> problem.  Eul alleged total damages of $225,000, including
> $65,4040.04 for medical expenses and $56,680 for past and
> future loss of earnings.  However, nothing in the history of
> the CDA remotely permits Eul to convert lost wages to
> loss-of-support damages and stack those on top of bodily
> injury damages.
>
> The legislature created the cause of action authorized by the
> CDA, and the legislature is free to expand or reduce the
> rights provided by the CDA.  K.R. v. Sanford, 605 N.W.2d
> 387, 391 (Minn. 2000).  But the remedy prescribed under
> the CDA "cannot be enlarged except by further legislative
> enactment."  Beck v. Groe, 245 Minn. 28, 44, 70 N.W.2d
> 886, 897 (1955)(citations omitted).

The very same may be said, here.  If the Minnesota Legislature was persuaded that the

limitations of coverage, which are contained in Section 340A.409, Subdivision 1, were

inadequate, or required stacking in order to be adequate, it is well within the

---

[4]Britamco was a declaratory judgment action, concerning the scope of insurance coverage for dram shop liability, that was brought by an liquor liability insurer against the insured liquor vendor.  Thomas Eul was the plaintiff in the underlying dram shop action, who had intervened in the suit to address the coverage issues.

Legislature's authority to make such changes to the Act as public policy warrants. Similarly, if the Legislature were dissatisfied with the holdings of the Minnesota Supreme Court, to the effect that a voluntarily intoxicated person cannot claim damages for his or her own bodily injury, see Nelson v. Larsen, 405 N.W.2d 455, 458 (Minn. App. 1987), the Legislature could vitiate such rulings, by expressly allowing the stacking of such coverages, as the Plaintiffs attempt to do here.[5]

While these cases do not specifically address whether Section 340A.409, Subdivision 1(1), requires liquor vendors, such as The Silver Dollar, to carry insurance coverage for $210,000.00, rather than $100,000.00, their holdings suggest that the

---

[5]In this respect, we note that the Peterson Plaintiffs suffered no "bodily injury," or "property damage," as the only personal injury, and property damage, was sustained by their decedent, who owned the car in which he was driving at the time of his unfortunate death.  As to those categories of damage, the assertedly intoxicated person -- here Peterson -- is not entitled to recover under the CDA. See, Nelson v. Larsen, 405 N.W.2d 455, 458 (Minn.App. 1987)("The Civil Damage Act, which provides the exclusive remedy against a dram shop for damages arising from improper sales of alcoholic beverages, does not create a cause of action in favor of one injured by his own intoxication."), citing Robinson v. Lamott, 289 N.W.2d 60, 62-63 (Minn. 1979), partially overruled on other grounds, Johnson v. Helary, Inc., 342 N.W.2d 146, 148 (Minn. 1984).  Accordingly, through the application of stacking, the Peterson Plaintiffs seek to recover damages to which they are not otherwise entitled under the CDA.

coverage requirements for "bodily injury" damages are designed to compensate one class of persons who are injured by an unlawful sale of alcohol -- namely, those person who suffer a physical injury -- while the coverage requirements for "loss of means of support" were intended to compensate the class of persons who are dependent on the injured person for support.[6] The either/or nature of these holdings provides further support for the plain language interpretation of Section 340A.409, Subdivision 1(1), so as to allow the coverage requirements to be satisfied by a $100,000.00 "Each Common Cause Limit."

After considering each of these factors, we find no ambiguity in Section 340A.409, Subdivision 1(1), and we conclude, based upon the language of the Act,

---

[6]None of the cases, upon which the Plaintiffs rely, are any more apposite. Even if House v. Saloka, 1992 WL 358699 (Minn.App., November 25, 1992), rev. denied (Minn., February 12, 1993), were precedential which, as an unpublished decision it is not, see Minnesota Statutes Section 480A.08(3), there is simply nothing in that decision which bears upon the question of insurance coverage limits, and the same may be said of Brault v. Acceptance Indemnity Insurance Co., 538 N.W.2d 144 (Minn. App. 1995). Unlike the circumstances in Brault, Scottsdale's insurance policy has a single occurrence limit of $100,000, irrespective of the type of damages being claimed -- be they property damage, bodily injury or otherwise -- and Brault says nothing about the Act's insurance coverage limits for liquor license applicants. While Shank v. Fidelity Mutual Life Ins. Co., 221 Minn. 124, 21 N.W.2d 235 (Minn. 1945) holds that insurance policy limitations, which violate State statutory requirements, are ineffective, Shank does not apply, here, as Scottsdale's policy does not violate any State statutes, including the CDA.

such case law as is extant and relevant, and the construction of the Act by the DPS, that, consistent with the determination of the Court in <u>Wohlsol, Inc.</u>, Section 340A.409, Subdivision 1(1), merely imposes coverage requirements, on liquor license applicants, in the amount of $100,000.00, which represents the coverage requirements for damages suffered by two or more individuals, in any one occurrence. Therefore, Scottsdale's policy of $100,000.00 "Each Common Cause Limit," was not illegal under Minnesota law.

Since we have found that the coverage requirements that are contained in Section 340A.409, Subdivision 1(1), do not apply to Scottsdale, as an insurance provider and, additionally, that the liquor liability policy, which was issued by Scottsdale to The Silver Dollar, was fully compliant with those coverage requirements, we recommend that Scottsdale's Motion for Summary Judgment be granted, and that the Plaintiffs' Motion for Summary Judgment, or in the Alternative to Certify Question to the Minnesota Supreme Court be denied.[7]

NOW, THEREFORE, It is –

---

[7]Since we conclude that the policy that was issued by Scottsdale to The Silver Dollar did not violate Section 340A.409, Subdivision 1(1), we need not, and do not, address the Plaintiffs' argument that the contract should be reformed, as there is no lawful basis upon which to reform that policy.

RECOMMENDED:

1.      That the Defendant's Motion for Summary Judgment [Docket No. 15] be granted.

2.      That the Plaintiffs' Motion for Summary Judgment, or in the Alternative to Certify Question to the Minnesota Supreme Court [Docket No. 17] be denied.

3.      That Judgment be entered in favor of the Defendant.


Dated:  December 14, 2005                     s/Raymond L. Erickson

                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than January 2, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than January 2, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.